Spear, C. J.
Additional facts necessary to an understanding of the points decided are, in substance, that on March 4, 1905, the defendant, Doctor Ryan, attended upon Mrs. Kroger who was on that day delivered of a child. Within thirty-six hours thereafter a fever developed, with chills and pains, indicating the presence of blood poison. The defendant being called treated the patient to relieve her of the septic condition, continuing such treatment until about March 20, following, when he ceased to attend expecting to be called if further needed. He did not attend further. Two days after, the patient having grown worse, a call was sent for the defendant, but he, being absent from the city, did not respond, and another physician (Doctor Foster) was called. This physician made an examination and, discovering a pus formation on the womb, treated the patient for that. Four *302 days later, the patient not improving, another physician (Doctor Gray) was called in consultation. Under the advice of the two physicians the patient was removed to a hospital, and an operation there performed on April 10, following. Later a second operation was performed. On this occasion there were present and assisting, Doctors Gray and Humphreys of the hospital staff, Doctor Early, one of the internes, and Doctor Foster. Doctor Early reserved some of the pus for the purpose of microscopic examination. May 12, following, the patient died. Doctor Gray’s report to the city board of health ascribed her death to puerperal septicemia.
One of the grounds of the negligence charged being failure on the part of Doctor Ryan to exercise proper care and skill in not removing all of the placenta from the womb of the deceased while attending her.at childbirth, it became important for the defendant at the trial to show that the microscopic examination of the pus by Doctor Early indicated the presence of gonococci, and that this fact tended to establish that the patient had been infected with gonorrhea, which germs, if present, would explain the cause of the septic condition of the patient and rebut the claim that she had become infected by reason of the alleged negligence of the defendant in not removing the entire placenta. At the trial Doctor Ryan testified that he did remove the entire placenta and had not in any way been negligent. Doctors Gray and Humphreys were also witnesses. The defendant undertook to establish by them his claim with respect to the presence of gonococci in the pus as disclosed by the examination. Both witnesses *303 answered that they could not testify to the presence of germs or the cause of infection because Doctor Early had conducted that examination and all they knew about it was what Doctor Early had told them. So the evidence tendered, being mere hearsay, was rejected. This exclusion of the testimony offered is the ground of the alleged surprise. Nothing was said by Doctor Ryan about his surprise, not even to his own counsel, and the trial proceeded . to verdict as before stated. Doctor Early appears not to have been within reach of a subpoena, having removed to the state Of Colorado.
Within due time, the defendant filed motion for new trial, and the" same was heard February 27, 1908. In support of his claim of accident and surprise the defendant introduced the affidavits of himself and of Doctors Early and Gray. The defendant in substance testified that he was surprised in the admission of evidence, especially the evidence of Doctor Gray, in that he was not permitted to testify to the fact, which defendant understood was within his personal knowledge, that the examination of the pus showed that it contained gonococci; that he relied upon Doctors Gray and Humphreys to prove that fact and in that way account for the infection, and relied upon what he believed to be within the personal knowledge of the physicians called; that he got his information from a conversation with Doctor Gray in which the latter told him that the patient was infected by gonococcus germs, as disclosed by the examination made by Doctor Early; that he was not told by either that he did not of his own knowledge know of the fact, and that he was *304 completely taken by surprise at the trial, and thus prevented from obtaining the evidence, which ordinary prudence could not have avoided. Doctor Early’s affidavit contained the statement that he then resided at Denver, Colorado, and had so resided for two years; that he formerly lived at Dayton; that he was present as an interne of the St. Elizabeth Hospital at an operation April 12, 1905, on Mrs. Kroger for pelvic abscess and removal of the right ovary and Fallopian tube; that there was committed to him pus taken from the abscess for the purpose of making a microscopic and bacteriological examination, which he made, and found it to contain bacteria of gonococci to .such an extent as to convince him of the unmistakable cause of infection; that he made a report to Doctors Gray and Humphreys as to such finding, but had no communication of like import with Doctor Ryan at any time. Doctor Gray’s affidavit contained the statement that previous to the trial he had a conversation with Doctor Ryan with reference to the operation; that he then told the defendant of the infection of decedent, and that the examination made by Doctor Early disclosed the presence of gonococci; that he did not tell Doctor Ryan in so many words that he of his own personal knowledge, knew of the infection, or that he did not so know of it; that he believes that Doctor Ryan assumed and acted upon the mistaken assumption that affiant knew of his personal knowledge of the presence of gonococci in the pus and relied upon his testimony in that respect, and that affiant did not discover the error into which Doctor *305 Ryan had been led by affiant’s remark until he was testifying as a witness at the trial.
Upon this presentation of evidence how stands the case? By his motion the defendant sought to take advantage of the provision of section 5305, Revised Statutes, which makes one ground for such motion “Accident or surprise, which ordinary prudence could not have guarded against.” To avail himself of this provision it was necessary for defendant to show that he exercised ordinary prudence and diligence in respect to the preparation of his defense, and in his effort to obtain relief from the prejudice created by the alleged surprise, and was not guilty of negligence in either respect. Does the evidence adduced at the hearing show such diligence? We think it does not. It would seem plain to any person of ordinary intelligence that the most reliable source of information with respect to the presence of germs in the pus was the physician who conducted the microscopical examination, Doctor Early. No effort was made by defendant prior to the trial to obtain the testimony of Doctor Early, although defendant knew that the examination was conducted by that physician. And when he undertook to obtain from Doctor Gray information as to the fact he conducted his inquiries in so careless a manner as not to elicit the source from which Doctor Gray had obtained his information; he did not inquire whether or not that physician was present at the examination, but carelessly assumed that he was present without asking a question upon that subject. This lack of diligence might perhaps have been overlooked or condoned by a broad-minded *306 trial judge in the liberal exercise of discretion upon motion for continuance, had the defendant at the proper time interposed such .motion. But whether so or not, it was clearly incumbent upon defendant to act promptly and claim relief at the earliest opportunity, using every means reasonably available at the time to remedy the effect of the failure of proof. This he utterly failed to do, or try to do. Instead of promptly making known his disappointment and surprise so that an appeal to the court might be made for leave to withdraw a juror and continue the case in order to obtain the desired testimony, the defendant was content to observe silence, let the trial proceed and take his chances of a favorable verdict upon the evidence as given. In this we consider the defendant was fatally negligent. New trials on the ground of surprise are and should be granted with great caution, and the granting or refusing of motions on this ground rests largely in the sound discretion of the trial court. The authorities are in accord on the proposition that a new trial will not be granted on the ground of surprise when the party might have been duly informed by the exercise of ordinary diligence, or' where it was induced by his own oversight, forgetfulness or neglect, or where the surprised party has failed to observe due diligence in seeking a remedy, and surely the proposition commends itself to the good judgment of bench and bar. Stevens v. Hey, 15 Ohio, 313; Moore v. Coates, 35 Ohio St., 177, 181; Hoskins v. Hight, 95 Ala., 284; Nelson v. Waters, 18 Ark., 570; Hull v. Ry. Co., 64 Minn., 402; C. & G. E. R. R. Co. v. Vosburgh, 45 Ill., 311; Doyle y. Sturla, 38 *307 Cal., 456; Dewey v. Frank, 62 Cal., 343; Hull v. McKay, 36 Mont., 441.
It is argued by counsel for plaintiff in error that, for an additional reason, the motion was properly overruled, viz., that the testimony of Doctor Early was at most cumulative. We do not regard a decision of that question indispensable to the disposition of the case, but it is in the case, is pertinent and of importance, for had the court held that evidence inadmissible because cumulative, or without probative force, the hearing would necessarily have stopped right there, and an order overruling the motion would have followed. We are not, however, inclined to assent to counsel’s claim. Cumulative evidence, as we understand it, is additional evidence of the same kind to the same point. Parker v. Hardy, 24 Pick., 246. The defendant, in the case at bar, had testified at the trial that he did remove all of the placenta, and was guilty of no negligence, and introduced various items of evidence in support of that claim. Put he introduced no proof as to the presence of the noxious germs in the pus. The testimony of Doctor Early was, therefore, 'a new kind of evidence. It was additional to the other evidence tending to prove the same defense, yet not cumulative because 'of a different character. It tended to establish the same general result but by proof of a new and distinct fact. Gandolfo v. The State, 11 Ohio St., 114, 119; Harris v. Ins. Co., Wright, 548; Reed v. McGrew, 5 Ohio, 376; Perin’s Admr. v. Ins. Co., 11 Ohio, 147; C., C., C. & I. R. Co. v. Long, 24 Ohio St., 133; Hurd v. French, 1 *308 C. S. C. R., 365; Redman v. Culbertson, 2 C. S. C. R., 18.
Other issues affecting the charge of negligence are involved in the case and were somewhat argued by counsel, but it is not necessary to refer to them specifically in disposing of the action of the court on the motion for new trial.
In conclusion it may be added that, as before stated, the granting or refusing of motion for new trial rests largely in the discretion of the trial court. Where this discretion is shown to have been abused the judgment thereon may be reversed, but where it is shown to have been properly exercised the result will not be disturbed by a reviewing court. In this case we are of opinion that the trial court’s discretion was not abused, but, on the other hand, was wisely and properly exercised. This leads to a reversal of the judgment of the circuit court and an affirmance of that of the common pleas, and it will be so ordered.
Reversed.
Davis, Shauck, Price, Johnson and Donahue, JJ., concur.